UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CLIFFORD MICHAELSON,

    Plaintiff,

    v.                                      CIVIL ACTION NO. 23-13164-MPK[1]

UNITED STATES OF AMERICA,
UNITED STATES VETERANS
ADMINISTRATION,

    Defendants.

MEMORANDUM AND ORDER ON
DEFENDANTS' PARTIAL MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT (#21)

MEMORANDUM AND ORDER ON
PLAINTIFF'S MOTION FOR LEAVE TO
FILE SECOND AMENDED COMPLAINT (#28)

KELLEY, U.S.M.J.

I. Introduction

Plaintiff Clifford Michaelson brings suit against the United States of America and his former employer, the United States Department of Veterans Affairs ("VA"), alleging violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. § 701 *et seq.*, and the Massachusetts Paid Family and Medical Leave Act ("PFMLA"), Mass. Gen. Laws ch. 175M, § 1 *et seq.* (#16, First Amended

---

[1] With the parties' consent, this case is assigned to the undersigned for all purposes, including trial and the entry of judgment, pursuant to 28 U.S.C. § 636(c). (#15.)

1

Complaint ("FAC")).[2] Defendants move pursuant to Fed. R. Civ. P. 12(b)(6) and 12(b)(1) to: (1) dismiss themselves and substitute the Secretary of Veterans Affairs as the defendant; (2) dismiss the ADA claim for failure to state a claim; and (3) dismiss the PFMLA claim for lack of subject matter jurisdiction. (#21.) Plaintiff opposes defendants' motion to partially dismiss (#29) and moves for leave to file a proposed Second Amended Complaint ("PSAC") (#28).

For the reasons set out below, defendants' motion to partially dismiss is allowed, and plaintiff's motion for leave to amend is denied without prejudice.

II. Background

The facts as alleged in the FAC are brief.

Plaintiff was a long-time employee of the VA, where he worked as a physician under successive fee agreements. (#16 ¶ 8.) In late 2020, plaintiff developed a serious health condition, which he describes as "chronic" and "a disability as defined by the ADA and [t]he Rehabilitation Act." Plaintiff provided the VA with notice of the condition and his need for a medical leave. *Id.* ¶¶ 9-10. As of December 2020, the VA was aware of plaintiff's health condition and at the end of that month, he went on medical leave. *Id.* ¶¶ 11-12.

Sometime later, plaintiff notified the VA of his willingness to return to work in mid- or late April 2021, and he and a supervisor initially discussed a July 2021 return. *Id.* ¶¶ 13-14. The VA, however, "failed and refused" to process plaintiff's return to work despite his "great effort" and the fact that he was under an agreement that provided for employment into 2022. *Id.* ¶¶ 15-16. Plaintiff claims that the VA "failed to engage in a good faith interactive process with" him "to determine a feasible reasonable accommodation for a return …." *Id.* ¶ 20. As plaintiff alleges, the VA failed to provide him "with a job protected medical leave as required by [the PFMLA]" and,

---

[2] The FAC refers to the agency as the "United States Veterans Administration."

acting with a "retaliatory and discriminatory" motive, failed to return him to work "because of and due to his disability" and "because of a perception and/or a record of disability." *Id.* ¶¶ 17-19, 21. As a result of the VA's failure to return him to work, plaintiff's employment with the VA was terminated. *Id.* ¶ 22.

Though it at first refused to provide plaintiff with any explanation as to why it had not returned him to work, the VA later "falsely claimed" that it was "due to economic or other reasons[,]" "falsely asserted" that plaintiff was not an employee, and then gave "numerous different and false, pretextual reasons." *Id.* ¶¶ 23, 25. According to plaintiff, his VA employment was terminated "in retaliation for his exercise of his rights to accommodation for a disability and need for a medical leave," an event which caused him significant economic loss and emotional distress. *Id.* ¶¶ 24, 26.

III. <u>Legal Standards</u>

"'Federal courts are courts of limited jurisdiction.'" *Calvary Chapel of Bangor v. Mills*, 984 F.3d 21, 30 (1st Cir. 2020) (quoting *Rhode Island v. EPA*, 378 F.3d 19, 22 (1st Cir. 2004)). Rule 12(b)(1) motions challenging subject-matter jurisdiction "are divided into two categories: facial challenges and factual challenges." *Cebollero-Bertran v. P.R. Aqueduct & Sewer Auth.*, 4 F.4th 63, 69 (1st Cir. 2021) (citing *Torres-Negrón v. J & N Records, LLC*, 504 F.3d 151, 162 (1st Cir. 2007)). Where, as here, a defendant brings a facial challenge by "rais[ing] a question of law without contesting the facts[,]" the court's Rule 12(b)(1) analysis is "essentially the same as a Rule 12(b)(6) analysis: [it] accept[s] the well-pleaded facts alleged in the complaint as true and ask[s] whether the plaintiff has stated a plausible claim that the court has subject matter jurisdiction." *Id.* (citing *Valentín v. Hosp. Bella Vista*, 254 F.3d 358, 363 (1st Cir. 2001)).

3

To survive a Rule 12(b)(6) motion, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "'Dismissal for failure to state a claim is appropriate if the complaint does not set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory.'" *Lister v. Bank of Am., N.A.*, 790 F.3d 20, 23 (1st Cir. 2015) (quoting *Lemelson v. U.S. Bank Nat'l Ass'n*, 721 F.3d 18, 21 (1st Cir. 2013)).

Fed. R. Civ. P. 15(a)(2), applicable here, provides that "[t]he court should freely give leave [to amend a complaint] when justice so requires." *Id*. "But this 'does not mean…that a trial court must mindlessly grant every request for leave to amend.'" *Nikitine v. Wilmington Trust Co.*, 715 F.3d 388, 390 (1st Cir. 2013) (quoting *Aponte-Torres v. Univ. of P.R.*, 445 F.3d 50, 58 (1st Cir. 2006)). Leave to amend may be denied where "the request is characterized by…futility," among other things. *Id.* (quoting *Palmer v. Champion Mortg.*, 465 F.3d 24, 30 (1st Cir. 2006) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Futility "means that 'the complaint, as amended, would fail to state a claim upon which relief could be granted.'" *Amyndas Pharms., S.A. v. Zealand Pharma A/S*, 48 F.4th 18, 40 (1st Cir. 2022) (quoting *Glassman v. Computervision Corp.*, 90 F.3d 617, 623 (1st Cir. 1996)). Futility is thus "'gauged by reference'" to Rule 12(b)(6). *Id.* (quoting *Juarez v. Select Portfolio Servicing, Inc.*, 708 F.3d 269, 276 (1st Cir. 2013) (quoting *Hatch v. Dep't for Children*, 274 F.3d 12, 19 (1st Cir. 2001)).

IV. Discussion

A. Defendants' Motion to Partially Dismiss.

When ruling on a motion to dismiss under both Rule 12(b)(6) and Rule 12(b)(1), the court should ordinarily address the Rule 12(b)(1) arguments first. *Northeast Erectors Ass'n of BTEA v.*

4

*Sec'y of Labor*, 62 F.3d 37, 39 (1st Cir. 1995). Here, however, there is good reason to address the Rule 12(b)(6) arguments in the motion to partially dismiss first, as plaintiff does not oppose them.

        1. Failure to State a Claim.

Count I of the FAC, titled "Disability Discrimination," asserts a claim under both the ADA and the Rehabilitation Act. (#16 ¶¶ 27-38.) Defendants move to dismiss the ADA claim. (#21; *see* #22 at 3.) They argue, correctly, that the ADA has no applicability to this case, involving a putative federal employee. (#22 at 4-5.) *See Calero-Cerezo v. U.S. Dept. of Justice*, 355 F.3d 6, 11, n.1 (1st Cir. 2004) ("[T]he ADA is not available to federal employees.") (additional citation omitted); *see also Field v. Napolitano*, 663 F.3d 505, 510, n.6 (1st Cir. 2011) (collecting cases).

Defendants also move to dismiss themselves and to substitute the Secretary of Veterans Affairs, Denis R. McDonough, as the defendant. They argue, and the court agrees, that the Rehabilitation Act claim may be brought against "'the head of the department, agency, or unit, as appropriate,'" but not the United States or VA. (#22 at 3-4, quoting 42 U.S.C. § 2000e-16(c).) *See Meyer v. Runyon*, 869 F. Supp. 70, 76 (D. Mass. 1994) (because the Rehabilitation Act "incorporate[s] the remedies and procedures" of Title VII, 42 U.S.C. § 2000e *et seq*., "the only proper defendant" with respect to a suit under the Rehabilitation Act "is the agency head[.]"); *see also Stoll v. Principi*, 449 F.3d 263, 265, n.2 (1st Cir. 2006).

Plaintiff acknowledges that he "seeks no relief under the ADA, only under the Rehabilitation Act"[3] and agrees that "the proper defendant" with respect to the Rehabilitation Act claim is the Secretary of Veterans Affairs. (#29 at 2.)

        2. Lack of Subject Matter Jurisdiction.

---

[3] Plaintiff states that the FAC only refers to the ADA "because the principles of employee protected under the ADA are applied to federal employees such as the plaintiff via the Rehabilitation Act." (#29 at 2.)

5

The Rule 12(b)(1) arguments are focused on the FAC's second count, for relief under the PFMLA. (#16 ¶¶ 39-46.) Defendants argue that the PFMLA claim fails because Congress has not waived sovereign immunity for such state-law suits. (#22 at 5.) In response, plaintiff, who as the party invoking subject matter jurisdiction bears the burden of proving that jurisdiction exists, *see Johansen v. United States*, 506 F.3d 65, 68 (1st Cir. 2007) (additional citations omitted), cites to the nonmonetary relief that he seeks, that is, reinstatement,[4] and the new statute that he includes in the PSAC (#28-1), the Administrative Procedures Act ("APA"), 5 U.S.C. § 702. (#29 at 4.)[5] The court therefore considers whether to grant leave to amend or whether amendment would be futile.

B. Plaintiff's Motion for Leave to Amend.

According to plaintiff in the motion for leave to amend, the PSAC adds a "statement of subject matter jurisdiction" for the PFMLA claim challenging "[a]gency action" in denying him "job protected medical leave" and which "seeks reinstatement as opposed to money damages." (#28 at 1-2); *see* #28-1 ¶ 6 ("The court also has jurisdiction over the plaintiff['s] claims under the [PFMLA] pursuant to 7 U.S.C. 502")[6]; *see also* #29 at 3 (seemingly acknowledging that any § 702 waiver of sovereign immunity would not apply to claim for money damages). The court notes that,

---

[4] Plaintiff also seeks declaratory relief. (#16 ¶¶ 38, 46); *see also* #28-1 ¶¶ 38, 47.

[5] Plaintiff's argument that sovereign immunity does not apply to "ministerial" acts, *see id*. at 4, is not adequately developed and at any rate it is unpersuasive. Defendants point out that plaintiff's discussion of discretionary versus ministerial functions appears to be an out-of-place reference to a dichotomy relevant in the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b), context. (#32 at 2.) The sole authority plaintiff cites in support of this argument, *Walen v. United States*, 246 F. Supp. 3d 449, 451 (D. D.C. 2017), a FTCA case, confirms this. Further, as defendants also point out, plaintiff does not seem to be seeking mandamus relief. (#32 at 2.)

[6] The court presumes that the citation to "7 U.S.C. 502" in the PSAC is meant to be a citation to 5 U.S.C. § 702.

6

contrary to plaintiff's apparent proffer, the PSAC in fact seeks money damages under the PFMLA, not just reinstatement. (#28-1 ¶ 47.) Thus, even if the court were inclined to grant leave to amend on the parties' briefing (it is not), the court would not grant leave to file the PSAC in its current form.

Relying exclusively on § 702's text,[7] citing no case law, plaintiff argues that § 702 waives sovereign immunity and confers subject matter jurisdiction over the claim for reinstatement under the PFMLA. (#29 at 3.)[8] Defendants counter that § 702's text does not clearly and unambiguously authorize suits against the federal government under state laws. (#32 at 2.)

Although neither party cites to these cases, the court notes that several Courts of Appeals have applied § 702's waiver of sovereign immunity ("[a]n action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or

---

[7] The statute reads, in whole:

> A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party. The United States may be named as a defendant in any such action, and a judgment or decree may be entered against the United States: *Provided*, That any mandatory or injunctive decree shall specify the Federal officer or officers (by name or by title), and their successors in office, personally responsible for compliance. Nothing herein (1) affects other limitations on judicial review or the power or duty of the court to dismiss any action or deny relief on any other appropriate legal or equitable ground; or (2) confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought.

5 U.S.C. § 702.

[8] The court clarifies that the APA does not "confer" subject matter jurisdiction. *Califano v. Sanders*, 430 U.S. 99, 107 (1977) ("the APA does not afford an implied grant of subject-matter jurisdiction permitting federal judicial review of agency action").

7

employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party") to state law claims. *See Texas v. United States Dept. of Homeland Security*, --- F. 4th ---, 2024 WL 4903376, at *8-11 (5th Cir. Nov. 27, 2024) (involving state's common law trespass to chattels claim; "It is true, of course, that courts construe ambiguities strictly in favor of sovereign immunity.... But there is no ambiguity here. By its terms, § 702 waives immunity for any "action" seeking nonmonetary relief in federal court....We cannot rewrite § 702 to say 'a federal action' when Congress only wrote 'an action.' ...);[9] *Perry Cap.*, 864 F.3d at 620 (involving Fannie Mae and Freddie Mac stockholders' common law breach of fiduciary duty claim; "We have 'repeatedly' and 'expressly' held in the broadest terms that 'the APA's waiver of sovereign immunity applies to any suit whether under the APA or not.' *Trudeau v. FTC*, 456 F.3d 178, 186 (D.C. Cir. 2006) (internal quotation marks omitted). Furthermore, we concluded in *United States Information Agency v. Krc*, 989 F.2d 1211 (D.C. Cir. 1993), that § 702 waived sovereign immunity for a (presumably) state tort claim against the Government because the FTCA did not 'impliedly forbid' the non-monetary relief the plaintiff sought. *Id.* at 1216 (citing § 702)");[10] *Treasurer of New Jersey v. United States Dept. of Treasury*, 684 F.3d 382,

---

[9] *Texas*, in which one panel member dissented, was decided about two months after the government filed the reply in support of the motion to partially dismiss. In the reply, the government relies on now Justice Kavanaugh's concurring opinion in *El-Shifa Pharm. Indus. Co. v. United States*, 607 F.3d 836 (D. D.C. Cir. 2010), where he observed that "the APA does not borrow state law or permit state law to be used as a basis for seeking injunctive or declaratory relief against the United States." *Id*. at 854; *see* #32 at 2. But, the *Texas* majority explained, *El-Shifa* "dealt with an APA cause of action and monetary damages, not a sovereign immunity waiver under § 702. Moreover, the D.C. Circuit has subsequently held that § 702's waiver *does* extend to state law claims." *Texas*, 2024 WL 4903376, at 11, n.16 (emphasis in original) (citing *Perry Cap. v. Mnuchin*, 864 F.3d 591, 620 (D.C. Cir. 2017)).

[10] As the *Texas* majority observed, *see* 2024 WL 4903376, at *9, the First Circuit has followed D.C., and other, Circuit precedent in holding that § 702 waives sovereign immunity for "*all* equitable actions" and thus "applies to any suit whether under the APA or not." *Puerto Rico v.*

400, n. 19 (3d Cir. 2012) (involving states' claims under respective unclaimed property acts); *but see Texas*, 2024 WL 4903376, at *30-31 (Ramirez, J., dissenting) (disputing majority's interpretation or reach of these and Sixth, Ninth, and Tenth Circuit precedents).

Yet, in reply, defendants also invoke Supremacy Clause, or intergovernmental, immunity. *See* #32 at 1 ("…under federalism and Supremacy Clause principles, federal activities are presumptively 'shield[ed]' from state law regulation absent a 'clear and unambiguous' 'congressional mandate' authorizing 'regulation by a subordinate sovereign.'") (quoting *Hancock v. Train*, 426 U.S. 167, 179 (1976); also citing *Mayo v. United States*, 319 U.S. 441, 445 (1943)); *see also United States v. California*, 921 F.3d 865, 878 (9th Cir. 2019 ("The doctrine of intergovernmental immunity is derived from the Supremacy Clause, U.S. Const., art. VI, which mandates that 'the activities of the Federal Government are free from regulation by any state.'") (quoting *Boeing Co. v. Movassaghi*, 768 F.3d 832, 839 (9th Cir. 2014) (quoting *Mayo*, 319 U.S. at 445)); *see generally United States v. Washington*, 596 U.S. 832, 838-839 (2022) (intergovernmental immunity "prohibit[s] state laws that *either* 'regulat[e] the United States directly *or* discriminat[e] against the Federal Government or those with whom it deals' (e.g., contractors)") (emphasis in original) (quoting *North Dakota v. United States*, 495 U.S. 423, 435 (1990) (plurality opinion)). Plaintiff does not address the intergovernmental immunity argument. *See*, *e.g.*, *Treasurer of New Jersey*, 684 F.3d at 409-412 (sovereign immunity did not bar suit, but intergovernmental immunity did); *cf. e.g.*, *Texas*, 2024 WL 4903376, at *11-15 (addressing

---

*United States*, 490 F.3d 50, 57-58 (1st Cir. 2007) (emphasis in original) (quotation marks omitted) (sovereign immunity did not bar Puerto Rico's claim for nonmonetary relief, which was grounded in state's power under federal Constitution to enact and enforce its criminal laws) (quoting *Trudeau*, 456 F.3d at 186). The *Texas* majority viewed extension of § 702's waiver to state law claims as a "logical[]" application of this holding. 2024 WL 4903376, at *9.

intergovernmental immunity separately and holding that state's suit did not seek to directly regulate the United States).

Finally, the court notes plaintiff's assertion, on the one hand, that he is "a federal employee" (who seeks no relief under the ADA) and on the other, that he is "a Massachusetts employee" (who seeks reinstatement under the PFMLA). (#29 at 2, 3.) Neither party addresses whether plaintiff is in fact an "employee," and defendants are an "employer," covered by the PFMLA. *See* M.G.L. ch. 175M, § 9(a) ("It shall be unlawful for any employer to retaliate by discharging, firing, suspending, expelling, disciplining, through the application of attendance policies or otherwise, threatening or in any other manner discriminating against an employee for exercising any right to which such employee is entitled under this chapter or with the purpose of interfering with the exercise of any right to which such employee is entitled under this chapter"); M.G.L. ch. 175M, § 1 ("Employee" "shall have the same meaning as provided in clause (h) of section 1 of chapter 151A…;" "Employer" "shall have the same meaning as provided in subsection (i) of section 1 of chapter 151A…; provided further, that any employer not subject to this chapter may become a covered employer under this chapter by notifying the department of family and medical leave and completing the procedure established by the department; and provided further, that a municipality, district, political subdivision or its instrumentalities shall not be subject to this chapter unless it adopts this chapter under section 10"); M.G.L. ch. 151A, § 1(h) ("Employee" means "any individual employed by any employer subject to this chapter and in employment subject thereto"); M.G.L. ch. 151A, § 1(i) ("Employer" means "any employment unit subject to this chapter, the commonwealth, its instrumentalities, political subdivisions, their instrumentalities, any instrumentality of more than one of the foregoing, and any instrumentality of any of the foregoing and one or more other states or political subdivisions…"); M.G.L. ch. 151A, § 1(j) ("Employing

10

unit" means "any individual or type of organization including any partnership, firm, association, trust, trustee, estate, joint stock company, insurance company, corporation, whether domestic or foreign, or his or its legal representative, or the assignee, receiver, trustee in bankruptcy, trustee or successor of any of the foregoing or the legal representative of a deceased person who or which has or subsequent to January first, nineteen hundred and forty-one, had one or more individuals performing services for him or it within this commonwealth").

The court will not delve into these or other complex issues without meaningful assistance from the parties. The court would not grant leave to file the PSAC in its current form regardless, and because it is plaintiff's burden to prove subject matter jurisdiction, the motion for leave to amend is denied without prejudice.

V. Conclusion

For the reasons set out above, defendants' motion to partially dismiss (#21), is allowed and plaintiff's motion for leave to amend (#28), is denied without prejudice. As the Rehabilitation Act claim is pending, within twenty-one days the parties must submit a joint proposed case schedule. They should indicate whether the court may set a case schedule based on the joint proposal, or whether the court should set a virtual scheduling conference.

The Clerk's Office is directed to amend the case caption to reflect the substitution of Denis R. McDonough, Secretary of Veterans Affairs, as the defendant in this case.

December 30, 2024                    /s/ M. Page Kelley
                                     M. Page Kelley
                                     United States Magistrate Judge