UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CLIFFORD MICHAELSON,

    Plaintiff,

    v.                                  CIVIL ACTION NO. 23-13164-MPK[1]

DENIS R. MCDONOUGH,[2]

    Defendant.

MEMORANDUM AND ORDER ON PLAINTIFF'S MOTION
FOR LEAVE TO FILE THIRD AMENDED COMPLAINT (#42.)

KELLEY, U.S.M.J.

I. Introduction.

    In December 2023, Plaintiff Clifford Michaelson filed a one-count complaint against the United States of America and his former employer, the United States Department of Veterans Affairs ("VA") (collectively, "Defendants"), alleging violations of the Massachusetts Paid Family and Medical Leave Act ("PFMLA"), Mass. Gen. Laws ch. 175M, § 1 et seq. (#1.)  It was not until April 2024 that Defendants were served a copy of the complaint, *see* ##5, 6,[3] and on June 18, 2024, they moved to dismiss it.  *See* #12.

---

[1] With the parties' consent, this case was assigned to the undersigned for all purposes, including trial and the entry of judgment, pursuant to 28 U.S.C. § 636(c).  (#15.)

[2] The Clerk is directed to amend the case caption to reflect the substitution of Douglas A. Collins, United States Secretary of Veterans Affairs, as defendant in this case.  *See* Fed. R. Civ. P. 25(d).

[3] *See also* #10 (accepting Plaintiff's response to #4, this court's order that he show cause for his failure to prove timely service in accordance with Fed. R. Civ. P. 4(m) and L.R. 4.1(a)).

While that motion was pending, Plaintiff filed an Amended Complaint, asserting, in addition to a claim under the PFMLA, claims under both the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq., and the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. § 701 et seq.  *See* #16, "First Amended Complaint" ("FAC.")[4]

On July 30, 2024, Defendants responded to the FAC by filing an answer (#23) and a partial motion to dismiss, pursuant to Fed. R. Civ. P. 12(b)(6) and 12(b)(1), seeking to: (1) dismiss the ADA claim for failure to state a claim; (2) dismiss the PFMLA claim for lack of subject matter jurisdiction; and (3) dismiss themselves and substitute Denis R. McDonough, the former United States Secretary of Veterans Affairs, as Defendant.  (#21.)

On August 26, 2024, the same day he opposed Defendants' partial motion to dismiss,[5] Plaintiff moved for leave to file a proposed Second Amended Complaint ("PSAC").  (##28, 29.) On December 30, 2024, this court issued a Memorandum and Order (#33) allowing Defendants' partial motion to dismiss and denying without prejudice Plaintiff's motion for leave to amend. Following a scheduling conference held in late January 2025, *see* #37, the parties proceeded with discovery on Plaintiff's Rehabilitation Act claim, which Defendants had not moved to dismiss. On April 25, 2025, Plaintiff again moved for leave to file an amended complaint, seeking to again add a claim under the PFMLA.  *See* ##42, 42-1, proposed "Third Amended Complaint" ("PTAC"). Defendant opposes.  (#46.)

For the reasons set out below, Plaintiff's motion for leave to amend (#42) is denied.

---

[4] In light of the FAC's filing, this court denied without prejudice as moot #12, Defendants' motion to dismiss Plaintiff's original complaint.  *See* #20.

[5] In opposing Defendants' motion, Plaintiff seemed to acknowledge that his PFMLA claim, as pled in the FAC, was deficient.  *See* #29 at 3.  He focused his arguments on seeking leave to file the PSAC and the newly-proposed PFMLA claim included in it.

II. Factual Background.

The facts as alleged in the PTAC are identical to those in the FAC.[6]  When assessing the merits of Plaintiff's proposed amendment, the court accepts the facts as true.  *See Efron v. UBS Fin. Servs. Inc. of P.R.*, 96 F.4th 430, 437 (1st Cir. 2024).

Plaintiff was a long-time employee of the VA, where he worked as a physician under successive fee agreements.  (#42-1 ¶ 9.)  In late 2020, Plaintiff developed a serious health condition, which he describes as "chronic" and "a disability as defined by [t]he Rehabilitation Act."  *Id.* ¶¶ 10-11.  He provided the VA with notice of this condition and his need for a medical leave.  *Id.*  As early as December 2020, the VA was aware of Plaintiff's condition, and at the end of that month, he went on medical leave.  *Id.* ¶¶ 12-13.

Sometime later, Plaintiff notified the VA of his willingness to return to work in mid- or late-April 2021, and he and a supervisor initially discussed a July 2021 return.  *Id.* ¶¶ 14-15.  The VA, however, "failed and refused" to process Plaintiff's return to work despite his "great effort" and the fact that he was under an agreement that provided for employment "well in[to] 2022[.]"  *Id.* ¶¶ 16-17.  Plaintiff claims that the VA "failed to engage in a good faith interactive process" with him "to determine a feasible reasonable accommodation for [his] return to work[.]"  *Id.* ¶ 21.  As plaintiff alleges, the VA failed to provide him "with a job protected medical leave as required by [the PFMLA]" and, acting with a "retaliatory and discriminatory" motive, failed to return him to work "because of and due to his disability" and "because of a perception and/or a record of disability."  *Id.* ¶¶ 18-22.  As a result of the VA's failure to return him to work, Plaintiff's employment was terminated.  *Id.* ¶ 23.

---

[6] That is, with the exception of Plaintiff's removal of any reference to the ADA in the "Facts and Allegations" section of the PTAC.  *Compare* #16 ¶ 10 *with* #42-1 ¶ 11.

Although it at first refused to provide Plaintiff with any explanation as to why it had not returned him to work, the VA later "falsely claimed" that it was "due to economic or other reasons[,]" and then "falsely asserted" that he was not an employee, offering "numerous different and false, pretextual reasons[.]" *Id.* ¶¶ 24, 26. According to Plaintiff, he was terminated "in retaliation for his exercise of his rights to accommodation for a disability and need for a medical leave," an event which caused him significant economic loss and emotional distress. *Id.* ¶¶ 25, 27.

III. <u>Legal Standard.</u>

Federal Rule of Civil Procedure 15(a)(2) provides that "[t]he court should freely give leave [to amend a complaint] when justice so requires." "But this 'does not mean . . . that a trial court must mindlessly grant every request for leave to amend.'" *Nikitine v. Wilmington Trust Co.*, 715 F.3d 388, 390 (1st Cir. 2013) (additional citation omitted) (ellipsis in original). Leave to amend may be denied where "the request is characterized by . . . 'futility,'" among other things. *Id.* (quoting *Palmer v. Champion Mortg.*, 465 F.3d 24, 30 (1st Cir. 2006)).

Futility "means that 'the complaint, as amended, would fail to state a claim upon which relief could be granted.'" *Amyndas Pharms., S.A. v. Zealand Pharma A/S*, 48 F.4th 18, 40 (1st Cir. 2022) (quoting *Glassman v. Computervision Corp.*, 90 F.3d 617, 623 (1st Cir. 1996)). Thus, futility is "'gauged by reference to the liberal criteria of Federal Rule of Civil Procedure 12(b)(6).'" *Id.* (quoting *Juarez v. Select Portfolio Servicing, Inc.*, 708 F.3d 269, 276 (1st Cir. 2013)).

Moreover, "a futility finding could also mean that the proposed complaint would require dismissal for other reasons, such as lack of subject-matter jurisdiction under Rule 12(b)(1)." *D'Agostino v. ev3, Inc.*, 845 F.3d 1, 6 n.3 (1st Cir. 2016); *see Rhode Island v. EPA*, 378 F.3d 19, 22 (1st Cir. 2004) (as "courts of limited jurisdiction[,]" federal courts "can hear cases only if and to the extent that they are authorized to do so by statute") (additional citations omitted).

4

IV. <u>Discussion</u>.

    A. <u>Plaintiff's Prior Motion to Amend (#28.)</u>

    On the same day he opposed Defendants' partial motion to dismiss the PFMLA and ADA claims of the FAC, Plaintiff proposed amending his complaint to add a "statement of subject matter jurisdiction" in support of a newly-proposed PFMLA claim which sought reinstatement rather than money damages, as his prior PFMLA claim had. (#28 at 1-2); *see* #28-1, "PSAC" ¶ 6. In particular, he argued that § 702 of the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 et seq., waived the federal government's sovereign immunity from his claim for nonmonetary relief under the PFMLA. (#29 at 3.) Defendants, however, had argued that § 702's "limited waiver" of sovereign immunity "does not even mention state law—let alone clearly and unambiguously authorize suits against the federal government under state law."[7] (#32 at 2.)

    The court addressed these arguments, *see Michaelson v. United States,* Civil Action No. 23-13164-MPK, 2024 WL 5246520, at *4-6 (D. Mass. Dec. 30, 2024), but ultimately concluded that Plaintiff had not carried his burden of establishing subject matter jurisdiction. *Id.* at *6. The court declined to delve into such complex issues without meaningful assistance from the parties and denied the motion to amend without prejudice.

---

[7] In reply, Defendants also invoked intergovernmental immunity. *See* #32 at 1 (arguing that "under federalism and Supremacy Clause principles, federal activities are presumptively 'shield[ed]' from state law regulation absent a 'clear and unambiguous' 'congressional mandate' authorizing 'regulation by a subordinate sovereign'") (quoting *Hancock v. Train*, 426 U.S. 167, 179 (1976)) (additional citations omitted) (alteration in original).

B. Plaintiff's Pending Motion for Leave to Amend (#42.)

In his pending motion, Plaintiff again seeks to amend his complaint to bring a PFMLA claim under § 702 of the APA,[8] arguing that principles of sovereign and intergovernmental immunity do not bar his proposed claim for "reinstatement under the PFML[A] statutory scheme as a Massachusetts resident who worked as an employee of the VA in Massachusetts."[9] (#42 at 7); *see* #42-1 ¶ 48(b). Defendant responds, once more, that neither of these principles permit Plaintiff to bring such a claim. *See* #46 at 3-6.

In any event, deciding the motion does not require this court to address either. Defendant advances two separate arguments, *see id.* at 6-9, each of which is independently sufficient to deny Plaintiff's motion to amend as futile.

1. The Civil Service Reform Act of 1978 ("CSRA"), 5 U.S.C. § 1101 et seq.

Defendant first argues, and the court agrees, that any PFMLA claim Plaintiff brings under § 702 challenging the personnel actions of his federal employer is preempted by the CSRA.

The CSRA provides "'a comprehensive system for reviewing personnel action taken against federal employees[,]" *Breda v. McDonald,* 153 F. Supp. 3d 496, 501 (D. Mass. 2015) (quoting *Elgin v. Dep't of Treasury*, 567 U.S. 1, 5 (2012)) (additional citation omitted), and "'prescribes in great detail the protections and remedies applicable to such action, including the availability of administrative and judicial review.'" *Burns v. Johnson*, 18 F. Supp. 3d 67, 76 (D. Mass. 2014) (quoting *United States v. Fausto*, 484 U.S. 439, 443 (1988)). Critically, the Act "preempts federal employees' court claims alleging that personnel actions, including

---

[8] *See* #42-1 ¶ 6 ("The court also has jurisdiction over the plaintiff's claims under the Massachusetts Paid Family Medical Leave Act pursuant to 7 U.S.C. 502.") Once more, the court presumes that Plaintiff's citation to "7 U.S.C. 502" is intended to be a citation to 5 U.S.C. § 702.

[9] Plaintiff also seeks declaratory relief. *See* #42-1 ¶ 48(a).

termination, violate the federal Constitution or state law." *Id.* (citing *Berrios v. Dep't of Army*, 884 F.2d 28, 30-32 (1st Cir. 1989)) (additional citation omitted); *see Roth v. United States*, 952 F.2d 611, 614-15 (1st Cir. 1991) (concluding, more than thirty years ago, that it was "beyond serious question that the CSRA preempts state-law challenges to prohibited personnel practices in the federal workplace") (and cases cited); *see also Breda,* 153 F. Supp. 3d at 502 (VA physician's claim "'that he was unfairly terminated f[ell] squarely within the definition' of prohibited personnel actions under the CSRA" and, accordingly, was preempted by the Act) (quoting *Mangano v. United States*, 529 F.3d 1243, 1247 (9th Cir. 2008)).

In recognizing the CSRA as "provid[ing] the exclusive mechanism for challenging adverse personnel actions in federal employment[,]" the First Circuit has explained that "[a] federal employee generally may not pursue alternative routes of judicial review, such as by filing a civil action in district court under the APA." *Rodriguez v. United States*, 852 F.3d 67, 82 (1st Cir. 2017); *see Pathak v. Dep't of Veterans Affairs,* 274 F.3d 28, 32-33 (1st Cir. 2001) (because the CSRA did not provide him with any right to judicial review, plaintiff, a VA physician, could not "go around [the Act] and assert federal jurisdiction by relying upon the [APA]" as "an independent source of review"). Within the APA, § 702 "generally waives the Federal Government's immunity from a suit 'seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority[,]'" though this waiver "does not apply 'if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought' by the plaintiff." *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 215 (2012) (quoting 5 U.S.C. § 702) (observing that § 702 "prevents plaintiffs from exploiting the APA's waiver to evade limitations on suit contained in other statutes").

Although the First Circuit appears not to have considered the precise issue of whether the CSRA preempts claims for nonmonetary relief under § 702 of the APA challenging prohibited personnel actions in federal employment, lower courts of this circuit that have been confronted with this question have concluded that it does. *See Villanueva v. United States*, 740 F. Supp. 2d 322, 324-25 (D.P.R. 2010) (court lacked subject matter jurisdiction over plaintiff's employment claim, brought under § 702, where the CSRA "preclude[d] any independent judicial relief for plaintiff's claim under the APA" and where the Act's "comprehensive nature has been specifically applied to rule out judicial review of a federal employee's termination under the APA"; "plaintiff's attempt to use the APA as a waiver of the federal government's sovereign immunity" was "groundless"); *Cook v. Helfer,* Civil Action No. 95-12174-GAO, 1996 WL 464038, at *3 (D. Mass. Aug. 9, 1996) (plaintiff's claim under § 702 seeking "an injunction placing him in his requested employment position" was dismissed where his "remedies l[aid] solely within the purely administrative procedures of the [CSRA]"; § 702's waiver was inapplicable "to federal employment actions, like [plaintiff's], that f[e]ll within the CSRA's ambit") (additional citations omitted); *see also Taydus v. Cisneros*, 902 F. Supp. 288, 292 (D. Mass. 1995) (observing that "[c]laims under the APA, which expressly excludes judicial review where provided for under another statute, . . . fare no better under the CSRA") (collecting cases).[10]

---

[10] Courts outside of this circuit have come to the same conclusion. *See, e.g., Krafsur v. Davenport*, No. 2:11–CV–170, 2013 WL 811685, at *5-10 (E.D. Tenn. Mar. 5, 2013) (collecting cases from across ten different federal circuit courts of appeal and concluding, "[b]ased on the clear weight of authority," that it lacked subject matter jurisdiction over a claim, brought under § 702, arising out of plaintiff's federal employment where that claim was "precluded by the 'comprehensive remedial scheme' established by the CSRA"), *aff'd*, 736 F.3d 1032 (6th Cir. 2013); *see also Keen v. Brown*, 958 F. Supp. 70, 75-77 (D. Conn. 1997) (the "broad scope of CSRA preemption" barred plaintiff's FMLA claim, brought under § 702, challenging her termination from VA employment); *Cruz v. United States,* Civil Action No. 1:09-79, 2012 WL 3573659, at *3-5 (D.V.I. Aug. 13, 2012) (and cases cited).

Plaintiff's PFMLA claim challenging the VA's termination of his employment and seeking reinstatement, under § 702, is preempted by the CSRA.[11]  Accordingly, because this court lacks subject matter jurisdiction over it, any such amendment would be futile.[12]

### 2. The Applicability of the PFMLA to Plaintiff's Federal Employment

In denying Plaintiff's prior motion to amend without prejudice, this court noted Plaintiff's problematic assertion that he was both "'a federal employee'" and "'a Massachusetts employee'" who sought reinstatement under the PFMLA, and observed that neither party had addressed the applicability of the PFMLA's defined terms to the facts of this case.  *Michaelson,* 2024 WL 5246520, at *5 (quoting #29 at 2-3 and citing Mass. Gen. Laws ch. 175M, §§ 1, 9(a) and Mass.

---

[11] Plaintiff does not address the issue of the CSRA's preemption in his motion or in any response to the arguments of Defendant's opposition, including Defendant's arguments that the CSRA applies to the personnel action(s) Plaintiff challenges, and that it applies to employees of his type. *See* #46 at 6-7 & n.3.

[12] The CSRA "provides for different treatment for 'mixed cases[.]'"  *Rodriguez v. United States,* Civil Action No. 3:14-01193-NT, 2015 WL 5008306, at *2 (D.P.R. Aug. 20, 2015), *aff'd,* 852 F.3d 67 (1st Cir. 2017) (quoting *Kloeckner v. Solis*, 568 U.S. 41, 44-47 (2012)) (additional citations omitted).  "A mixed case under the CSRA is defined as a 'serious' personnel action -- e.g., removal -- that the employee alleges was based on discrimination prohibited by another federal statute." *Serrano-Colon v. U.S. Dep't of Homeland Sec.*, 121 F.4th 259, 275 n.22 (1st Cir. 2024) (quoting *Kloeckner,* 568 U.S. at 45).  "An employee bringing a mixed case must exhaust administrative remedies before seeking judicial review in federal district court."  *Id.; see Rodriguez,* 852 F.3d at 84 ("A federal employee bringing a mixed case . . . may first file a discrimination complaint with the agency itself . . . and [i]f the agency decides against her, the employee may then either take the matter to the [Merit Systems Protection Board ("MSPB")] or bypass further administrative review by suing the agency in district court.") (additional quotations and citations omitted) (first alteration in original).  Neither party addresses whether Plaintiff's complaint presents a "mixed case," and the allegations of the PTAC are murky.  *See, e.g.,* #42-1 ¶¶ 37-38 (describing an Equal Employment Opportunity Commission ("EEOC") complaint and investigation but not the results of any final decision); *see also Rodriguez*, 852 F.3d at 84, 87 (plaintiffs' "attempt to escape the preclusive effect of the CSRA by arguing that they ha[d] brought a 'mixed case'" failed; because they had not obtained a final decision from the agency's EEO office, "they had no basis for bypassing the MSPB and filing their non-discrimination claims in district court as a mixed case").  Still, even if Plaintiff's case were a "mixed" one, his proposed PFMLA claim would be futile for the reasons described below.

Gen. Laws ch. 151A, § 1(h)-(j)). Defendant now asserts that Plaintiff's proposed claim is futile because the PFMLA has no application to his federal employment, arguing that the PFMLA unambiguously excludes from its definition of "employment" service performed in the course of federal employment.[13] (#46 at 8.) The court agrees.

Mass. Gen. Laws ch. 175M, § 1 provides, in relevant part, that "employment" for purposes of the PFMLA "shall have the same meaning as provided by clause (k) of section 1 of chapter 151A."[14] Mass. Gen. Laws ch. 151A, § 1(k) defines "employment" as "service, including service in interstate commerce, performed for wages or under any contract, oral or written, express or implied, by an employee for his employer as provided in this section and in sections two, three, four A, five, six and eight C." Section 6(e) of ch. 151A, "Service not included in 'employment,'" excludes, by its own terms, "[s]ervice performed in the employ of the United States government" from the statute's definition of "employment." Mass. Gen. Laws ch. 151A, § 6 ("The term 'employment' shall not include: . . . (e) [s]ervice performed in the employ of the United States government"); *see also* Mass. Gen. Laws ch. 175M, § 1 (explaining that "employee" "shall have the same meaning as provided in clause (h) of section 1 of chapter 151A"); Mass. Gen. Laws ch. 151A, § 1(h) (in turn defining "employee" as "any individual employed by any employer subject to this chapter and in employment subject thereto").

Because the PFMLA is inapplicable to his federal employment, Plaintiff fails to state a claim under the statute and his proposed amendment is futile.

---

[13] Plaintiff does not address this issue in his motion or in any response to Defendant's opposition, either.

[14] Mass. Gen. Laws ch. 151A is the Massachusetts unemployment insurance statute.

V. <u>Conclusion.</u>

For the reasons set out above, plaintiff's motion for leave to amend (#42) is denied.  This case shall proceed on Plaintiff's First Amended Complaint (#16) and his single claim,[15] under the Rehabilitation Act, that remains.


August 4, 2025                                    /s/ M. Page Kelley
                                                 M. Page Kelley
                                                 United States Magistrate Judge

---

[15] The court presumes that, in light of its prior order dismissing Plaintiff's ADA claim and Plaintiff's own assertion that he "brings this action . . . for violation of [the] [Rehabilitation Act] . . . and . . . under the [PMFLA][,]" #42-1 at 1, any reference to an ADA claim in the PTAC is in error.  *See id.* ¶¶ 32, 39.